WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin L Thompson, | No. CV-22-00205-TUC-SHR |
| Plaintiff, | **Order Granting Defendants' Motion to Dismiss** |
| v. | |
| Resurgent Capital Services LP, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").  (Doc. 27.)  For the reasons that follow, the Court grants Defendants' Motion and dismisses Plaintiff's FAC with leave to amend.

## I.      Plaintiff's FAC

Plaintiff alleges Defendants Resurgent Capital Services, LP ("Resurgent"), LVNV Funding, LLC ("LVNV"), and Johnson Mark, LLC ("Johnson"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(2), e(8), e(10), and 1692f, based on each Defendant's "unlawful debt collection practices on a debt that never belonged to Plaintiff."  (Doc. 26 at 6–14.)  Specifically, Plaintiff alleges each Defendant did the following:

- Each Defendant "violated § 1692e(2) when it falsely misrepresented the character, amount, or legal status of the alleged debt.  Defendant falsely reported a debt not owed on Plaintiff's credit report, thereby creating a false representation of Plaintiff's credit worthiness."  (Doc. 26 ¶¶ 39 (Resurgent),

65 (LVNV), 91 (Johnson).)

- Each Defendant "violated § 1692e(8) when it falsely reported a debt not owed on Plaintiff's credit report. Defendant knew or should have known that the information it reported to the credit consumer agency was false. In addition, Defendant also neglected to update Plaintiff's Experian Credit Report as consumer disputed after receiving Plaintiff's disputes regarding the subject debt." (*Id.* ¶¶ 41–42 (Resurgent), 67–68 (LVNV), 93–94 (Johnson).)

- Each Defendant "violated § 1692e(10) by using false, deceptive, and misleading representations in connection to collection of the subject debt. In order to secure payments on the subject debt, Defendant falsely misrepresented Plaintiff's legal obligation to pay subject debt despite Plaintiff not owning [sic] the subject debt and having no legal obligation to pay." (*Id.* ¶¶ 43 (Resurgent), ¶ 69 (LVNV), ¶ 95 (Johnson).)

- Each Defendant "violated § 1692f when it used unfair and unconscionable means to collect the subject debt. The alleged subject debt was not owed at the time Defendant demanded payment, but Defendant demanded Plaintiff make a payment on subject debt even though the subject debt did not belong to Plaintiff at any point. In addition, Defendant violated § 1692f reporting a debt not owed on Plaintiff's credit reports. This conduct was unfair and unconscionable because it created a false and damaging portrayal of Plaintiff's credit history." (*Id.* ¶¶ 45–46 (Resurgent), 71–72 (LVNV), 97–98 (Johnson).)

The following facts are derived from Plaintiff's FAC. In about March 2022, Plaintiff received a letter from Resurgent "attempting to collect a past due balance on a Credit One Bank N.A. credit card owed to [LVNV]" of almost one thousand dollars. (Doc. 26 ¶ 10.) Plaintiff was confused by the letter because he had never applied for or opened a line of credit with Credit One Bank N.A., so the subject debt did not belong to him. (*Id.* ¶¶ 11–12.) Sometime before March 28, 2022, Plaintiff called Resurgent to "inquire more

1   information regarding the subject debt." (Doc. 26 ¶ 15.)  Plaintiff spoke with someone at

2   Resurgent and explained that the subject debt did not belong to him, as he had never

3   received services from Credit One Bank N.A. at any point, and Resurgent told him he

4   would need to send an affidavit to Monarch Recovery Management ("Monarch").  (*Id.*

5   ¶¶ 16–17.)  Plaintiff agreed to send an affidavit to Monarch, but he was "confused why he

6   would need to send an affidavit to dispute the subject debt to another third party debt

7   collector that Plaintiff has never communicated with."[1]  (*Id.* ¶ 18.)

8        Around March 26, 2022, Plaintiff received a similar letter from Johnson attempting

9   to collect the same subject debt owed to LVNV, and this letter "only confused the Plaintiff

10  further as he was unsure as to whom rightfully was attempting to collect the subject debt,

11  despite a balance not actually being owed by Plaintiff and the subject debt belonging to a

12  different person." (*Id.* ¶¶ 13–14.)

13       On March 28, 2022, Resurgent sent Plaintiff another letter "as a response to

14  Plaintiff's disputes from Johnson Mark LLC indicating the dispute would only be

15  investigated if Plaintiff could submit additional documentation"—specifically, "Plaintiff

16  would need to send a police report indicating fraud, an affidavit, or other documentation

17  supporting Plaintiff's claims" that the subject debt was not his.  (Doc. 26 ¶¶ 19–20.)

18  Because Plaintiff did not believe himself to be a victim of identity theft, he "was further

19  confused" about why Johnson requested such documentation, as the subject debt "merely

20  belonged to another person unknown to Plaintiff." (*Id.* ¶ 21.)  Each Defendant "continued

21  to send dunning letters to Plaintiff despite being put on notice that he was not the intended

22  recipient of these letters and never had any business relationships with Defendants or their

23  predecessors." (*Id.* ¶ 22.)  Because of those letters, which Plaintiff describes as "materially

24  misleading collection attempts of a debt not owed," Plaintiff "was led to believe

25  Defendants would not stop contacting him attempting to collect a debt not belonging to

26  [him]." (*Id.* ¶ 23.)

27       Plaintiff later learned LVNV was reporting the subject debt to TransUnion, Equifax,

28

---

[1]Plaintiff does not allege he ever sent the requested affidavit or any other documentation to support his assertion that the subject debt did not belong to him.

1   and Experian, and he alleges that reporting "has negatively affected [his] credibility as a
2   consumer" and he "continues to fear the negative repercussions that could occur from the
3   negative reporting." (Doc. 26 ¶¶ 24–25.)  Plaintiff alleges he has felt "extremely worried"
4   about negative consequences if he did not pay the debt, despite not owing it, and
5   Defendants' "misleading conduct" has "severely disrupted [his] daily life and general well-
6   being," as he "constantly feared serious consequences." (*Id.* ¶¶ 26–27.)  As a result,
7   Plaintiff sought the assistance of counsel to file this action "to prevent Defendant[s] from
8   further deception in the future, thus incurring costs and expenses." (*Id.* ¶ 28.)

9   **II.   Motion to Dismiss Standard**

10         Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a
11   claim for relief by asserting "failure to state a claim upon which relief can be granted."
12   "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
13   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
14   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
15   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
16   statements, do not suffice." *Id.*  "A claim has facial plausibility when the plaintiff pleads
17   factual content that allows the court to draw the reasonable inference that the defendant is
18   liable for the misconduct alleged." *Id.*  The complaint, however, must contain more than
19   "a statement of facts that merely creates a suspicion [of] a legally cognizable right of
20   action." *Twombly*, 550 U.S. at 555 (quoting 5 Fed. Prac. & Proc. Civ. § 1216 (3d ed.)).

21         The Court will "accept factual allegations in the complaint as true and construe the
22   pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire*
23   *& Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, the Court will not
24   accept as true unreasonable inferences or conclusory legal allegations cast in the form of
25   factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also*
26   *Iqbal*, 556 U.S. at 679.  In addition, a court "cannot assume any facts necessary to [a
27   plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal.*
28   *v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005).  "Determining whether a

1   complaint states a plausible claim for relief [is] . . . a context-specific task that requires the
2   reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at
3   679.

4   **III.   Defendants' Motion to Dismiss**

5       Defendants argue Plaintiff has failed to state a claim upon which relief can be
6   granted because Plaintiff "has alleged no material misrepresentation made in the letters he
7   received" and "credit reporting is not actionable under the FDCPA, and Defendants
8   correctly reported the debt [as] 'disputed.'" (Doc. 27 at 6–8.)  Defendants further argue
9   Plaintiff's FAC should be dismissed without leave to amend because Plaintiff "has not
10  identified—and cannot identify—any material misrepresentations relating to the debt at
11  issue." (*Id.* at 10.)  This is because, according to Defendants, the March 2022 letters
12  complied with the FDCPA, and the reporting of the debt as "disputed" by LVNV was
13  accurate. (*Id.*)  Lastly, Defendants note Plaintiff has already amended his complaint and
14  "failed to correct the deficiencies." (*Id.*)

15  **IV.   Discussion**

16      Under the FDCPA, "[a] debt collector may not use any false, deceptive, or
17  misleading representation or means in connection with the collection of any debt." 15
18  U.S.C. § 1692e.  Prohibited conduct includes falsely representing "the character, amount,
19  or legal status of any debt," knowingly communicating false credit information "including
20  the failure to communicate that a disputed debt is disputed," and using false representations
21  or deceptive means to try to collect any debt.  §§ 1692e(2), e(8), e(10).  Further, a collector
22  may not use unfair or unconscionable means to collect or attempt to collect any debt.  15
23  U.S.C. § 1692f.

24      The FDCPA's goal is to "protect consumers from 'improper conduct' and
25  illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt
26  collectors.'" *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1170 (9th Cir.
27  2006) (internal citation omitted).  Consequently, courts apply the "least sophisticated
28  debtor" standard to determine if the collector's actions or information provided were

1  misleading or confusing. *Id.* at 1171. The least-sophisticated-debtor standard asks whether

2  the least sophisticated debtor is "able to understand, make informed decisions about, and

3  participate fully and meaningfully in the debt collection process." *Id.* While the least

4  sophisticated debtor may be "uninformed, naïve, and gullible," his interpretation of a

5  collection letter cannot be "bizarre or unreasonable." *Tourgeman v. Collins Fin. Servs.,*

6  *Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (internal citation omitted). When determining

7  FDCPA liability, courts are "not concerned with mere technical falsehoods that mislead no

8  one, but instead with genuinely misleading statements that may frustrate a consumer's

9  ability to intelligently choose his or her response." *Id.* (internal citation omitted). That is,

10  a debt collector's false or misleading representation must be "material" to be actionable

11  under the FDCPA. *Id.* In other words, because "false but non-material representations are

12  not likely to mislead the least sophisticated [debtor]," they are not actionable under the

13  FDCPA. *Id.*

14    An "allegation that the debt sought to be collected is not owed, standing alone,

15  cannot form a basis for a 'false and misleading' practices claim under the FDCPA." *Bleich*

16  *v. Revenue Maximization Grp,. Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002). Similarly,

17  an allegation that a collector violated the FCDPA by sending letters to the wrong person is

18  insufficient, on its own, to support a claim. *See, e.g., Campbell v. MBI Associates, Inc.*, 98

19  F. Supp. 3d 568, 586 (E.D.N.Y. 2015) (rejecting claim that collector violated FCDPA by

20  sending letters to a person who, according to plaintiff, knew was not responsible for the

21  debt where collector sent letters to two-year-old son of debtor in attempt to collect debt

22  incurred for son's medical treatment); *Richeson v. Javitch, Block & Rathbone, LLP*, 576 F.

23  Supp. 2d 861, 868 (N.D. Ohio 2008) (dismissing complaint alleging collector violated

24  FDCPA by sending validation letter regarding debt that plaintiff asserts was the result of

25  identity theft and was not owed by plaintiff because complaint was "bereft of any facts that

26  would make it reasonable to infer that [collector] had actual knowledge that the debt did

27  not belong to [plaintiff]").

28    Further, debt collector communications with a credit reporting agency do not

support a cause of action under the FDCPA unless the communication is unlawful. *Horvath v. Premium Collection Servs., Inc.*, No. CV-09-2516PHX-GMS, 2010 WL 1945717, at *2 (D. Ariz. May 13, 2010).   The FDCPA does not specify when such communications are unlawful, but the Fair Credit Reporting Act ("FCRA") outlines when these communications are allowed.  *Id.*  For instance, the FCRA "requires furnishers of information . . . to consumer reporting agencies to provide accurate information" regarding a consumer's debt.  *Id.* (internal citations omitted); 15 U.S.C. § 1681s-2(a).  However, there is no private right of action under the FCRA to enforce the obligations of § 1681s-2(a). *Horvath*, 2010 WL 1945717, at *2; *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).  And, a plaintiff "cannot circumvent the FCRA by raising his claim pursuant to the FDCPA."  *Horvath*, 2010 WL 1945717, at *3.

### A. Alleged Violations of § 1692e

Plaintiff does not state what language in the letters is false, misleading, or deceptive or identify any material misrepresentation, nor does he explain what the letters actually said, beyond calling them "dunning letters."  (Doc. 26 at 4.)  Instead, Plaintiff claims the letters were false, misleading, or deceptive merely because Defendants attempted to collect from Plaintiff a debt belonging to someone else, and Defendants continued attempts to collect after Plaintiff verbally informed Resurgent he was not the person who owed the debt.  (Doc. 26 at 4–5.)  Plaintiff also does not allege he submitted the additional documentation confirming he was not in fact the debtor, despite Defendants informing him "the dispute would only be investigated if Plaintiff could submit additional documentation" and Plaintiff stating he would submit the documentation.  (Doc. 26 at 4.)  He does not explain why he did not follow-through with sending an affidavit to Monarch, despite alleging he had agreed to do so.  Plaintiff merely alleges these communications with Defendants "confused" him because the debt was not his.

These allegations, accepted as true and construed in the light most favorable to Plaintiff, are insufficient to support his claim.  First, Plaintiff fails to identify any materially false, deceptive, or misleading representation in the letters.  As noted, an allegation that the

debt sought to be collected is not owed is insufficient to state a claim for false and misleading practices under the FCDPA.  *See Bleich*, 233 F. Supp. 2d at 500.  To the extent Plaintiff appears to assert Defendants sent the letters to the wrong person, the Court notes such an allegation is also insufficient to state a claim for false and misleading practices under the FDCPA.  *See Campbell*, 98 F. Supp. 3d at 586; *Richeson*, 576 F. Supp. 2d at 868. Second, Plaintiff's factual allegations do not show the least sophisticated debtor would be so genuinely misled that he could not intelligently choose his response.  *See Tourgeman*, 755 F.3d at 1119; *see also Clark*, 460 F.3d at 1171.  Third, to the extent Plaintiff appears to allege Defendants violated § 1692e(2) when they "falsely reported a debt not owed on Plaintiff's credit report," Plaintiff's claim fails because the FDCPA does not govern credit reporting.

### B.  Alleged Violations of § 1692f

Plaintiff's sole allegations with respect to § 1692f are that Defendants "used unfair and unconscionable means to collect the subject debt" and "report[ed] a debt not owed on Plaintiff's credit reports."  (Doc. 26 at 8, 11, 13–14.)  Plaintiff, however, fails to identify what means Defendants used that were unfair and unconscionable.  And, for the reasons explained above, Plaintiff's allegations based on Defendants reporting the debt to the credit reporting agencies are not actionable under the FDCPA.  Therefore, Plaintiff has failed to state a claim upon which relief may be granted.

### C.  Leave to Amend

Plaintiff requests leave to amend, asserting he "clearly and plainly alleges that Defendants attempted to collect a debt form [sic] him in his First Amended Complaint." (Doc. 30 at 11.)  He further asserts that although Defendants' Motion to Dismiss is based primarily on the letters Defendants sent and on their reporting of the debt, "Plaintiff still alleges conduct beyond the letter and credit reporting that could be found misleading or unconscionable, namely Defendants directing him to send an affidavit to a third party, Defendants asking for an identity theft declaration when Plaintiff did not claim identity theft, and the continuous collection activity from Defendant[s] after they were put on notice

1    the debt was not Plaintiff's." (*Id.*)

2        Given the "liberal pleading standard" employed by courts in the Ninth Circuit, the

3    Court grants Plaintiff leave to file a second amended complaint to the extent Plaintiff may

4    clarify his allegations about the content of Defendants' letters. *See AlliedSignal, Inc. v.*

5    *City of Phoenix*, 182 F.3d 692, 696 (9th Cir. 1999); *DCD Programs, Ltd. v. Leighton*, 833

6    F.2d 183, 186 (9th Cir. 1987) (in accordance with the Federal Rules' liberal pleading

7    standards, courts typically apply the policy of free amendment with much liberality).

8    Specifically, if Plaintiff files a second amended complaint, he must include the language

9    from the letters he alleges is misleading, false, or deceptive. If he fails to do so, the Court

10   may dismiss the second amended complaint without leave to amend. For the reasons

11   explained above, Plaintiff's claims based on Defendants' reporting of the debt fail as a

12   matter of law, and Plaintiff may not include such claims in his second amended complaint.

13       As to Plaintiff's contention that he has alleged conduct that is misleading or

14   unconscionable, beyond Defendants' letters and credit reporting, the Court disagrees.

15   Plaintiff's allegations that Defendants "used unfair and unconscionable means to collect

16   the subject debt" are thread-bare, as the only thing Plaintiff alleges is Defendants demanded

17   payment of a debt that was not owed and was not Plaintiff's. It is not until Plaintiff's

18   response to Defendants' Motion to Dismiss that he alleges that it was "misleading or

19   unconscionable" for Defendants to direct him to send an affidavit to a third party, ask him

20   for an identify-theft declaration, and continue collection attempts after Defendants "were

21   put on notice the debt was not Plaintiff's." (Doc. 30 at 11.) Nonetheless, because of the

22   liberal pleading standard, the Court will allow Plaintiff to include such allegations in a

23   second amended complaint. Plaintiff is warned that "[t]hreadbare recitals of the elements

24   of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556

25   U.S. at 678.

26       Accordingly,

27       **IT IS ORDERED** Defendants' Motion to Dismiss Plaintiff's First Amended

28   Complaint (Doc. 27) is **GRANTED,** and Plaintiff's First Amended Complaint (Doc. 26)

is **DISMISSED**.

**IT IS FURTHER ORDERED** Plaintiff is granted to leave to file a second amended complaint on or before **Thursday, January 26, 2023**.  If Plaintiff does not file a second amended complaint on or before this deadline, the Clerk of Court shall close this action.

Dated this 12th day of January, 2023.

Honorable Scott H. Rash
United States District Judge