Marvin C. Ruth (024220)
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
Telephone: (602) 381-5462
Facsimile: (602) 224-6020
Email: mruth@cblawyers.com

*Attorneys for Defendants
Resurgent Capital Services LP,
LVNV Funding LLC and
Johnson Mark LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin L. Thompson, | No. 4:22-cv-00205-SHR |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| v. | |
| Resurgent Capital Services LP, LVNV Funding LLC and Johnson Mark LLC, | |
| Defendants. | |

Defendants Resurgent Capital Services LP, LVNV Funding, LLC and Johnson Mark LLC (collectively, "Defendants") hereby move for an order dismissing with prejudice Plaintiff Benjamin L. Thompson's ("Plaintiff") Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") continues to fail as a matter of law. Specifically, Plaintiff has essentially ignored this Court's prior order and once again failed to allege how the content of the letters he received was in any way misleading or unconscionable.

1    This Motion is based on this Notice, the attached Memorandum of Points and

2    Authorities, the pleadings and records on file in this action, and any other argument or

3    evidence that may be presented in support of this Motion.

4        This Motion is made following the conference of counsel pursuant to L.R. 12(c)

5    which took place on June 9, 2022.

6                        **MEMORANDUM OF POINTS AND AUTHORITIES**

7    **I.    INTRODUCTION**

8        In his Second Amended Complaint ("SAC"), Plaintiff Benjamin L. Thompson

9    ("Plaintiff") once again fails to allege any material violation of the Fair Debt Collection

10   Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") against Defendants.[1]  In granting

11   Defendants' prior Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") with

12   leave to amend, this Court directed Plaintiff to allege "the content of Defendants' letters."

13   *See* ECF No. 32 ("Order"), p. 9:2-4.  Specifically, this Court instructed Plaintiff that if he

14   filed an SAC, "he must include the language from the letters he alleges is misleading,

15   false, or deceptive.  If he fails to do so, the Court may dismiss the second amended

16   complaint without leave to amend." *Id.*, p. 9:8-10.  This Court further held that

17   "Plaintiff's claims based on Defendants' reporting of the debt fail as a matter of law, and

18   Plaintiff may not include such claims in his second amended complaint." *Id.*, p. 9:11-12.

19       Plaintiff has failed to comply this Court's Order, thereby confirming that the SAC

20   cannot be cured.  His SAC is devoid of any description of the letters' content or

21   explanation of how that content was actionably "misleading" to the least sophisticated

22   debtor.  *See* SAC, ¶¶ 14, 18-20.  Instead, Plaintiff simply reiterates in conclusory language

23

24   [1] Defendants are Resurgent Capital Services LP ("Resurgent"), LVNV Funding, LLC
     ("LVNV") and Johnson Mark LLC ("Johnson Mark") (collectively, "Defendants").
25   Plaintiff has organized his FDCPA into three "counts," asserting identical FDCPA claims
     against each of the three Defendants.
26

1  identical to that of the FAC, which the Court has already concluded was insufficient to

2  state a claim: "Defendants each continued to send [undisclosed] dunning letters." See

3  SAC, ¶ 19. Moreover, Plaintiff also flouts the Court's Order by reasserting the same

4  credit reporting allegations that this Court expressly instructed him to remove from any

5  SAC. *See* SAC, ¶¶ 21-22, 39-42, 65-68, 73.

6      Rather than comply with this Court's Order, Plaintiff now contends that he was not

7  a victim of identity theft, but rather, that Defendants allegedly "mixed or merged Plaintiff

8  with another Benjamin Thompson." SAC, ¶¶ 12-13. This is a distinction without a

9  difference. Regardless of Plaintiff's subjective beliefs about who might have opened the

10 account, or how it became associated with his personally identifying information, he

11 admits that he refused to cooperate with Defendants' fraud investigation, and instead filed

12 this lawsuit, claiming "confusion." *Id.*, ¶ 18. But even the least sophisticated debtor

13 would not be confused by a clear request for the information required to investigate

14 Plaintiff's claim that the account did not belong to him.

15     Because Plaintiff has failed for a third time to state a cognizable FDCA claim,

16 Defendants respectfully request that Plaintiff's SAC be dismissed without leave to amend.

17 **II.    THE ALLEGATIONS OF THE SAC**

18     The substantive allegations of the SAC are almost identical to those of Plaintiff's

19 failed FAC. Plaintiff alleges that "[i]n or around March 2022," he received a letter from

20 Resurgent "attempting to collect a past due balance on a Credit One Bank" credit card

21 owned by LVNV. SAC, ¶ 10. Plaintiff further alleges that "on or around March 26, 2022,"

22 he received a second letter from Johnson Mark "attempting to collect the same debt owed to

23 LVNV." *Id.*, ¶ 14. Plaintiff claims that both letters "confused" him because he had never

24 opened the underlying account with Credit One Bank and believed he did not owe the debt.

25 *Id.*, ¶¶ 11, 15.

26

In response to the letters, "around the end of March, 2022," Plaintiff called Resurgent and claimed that the debt "did not belong to him."  Cmplt., ¶¶ 12-13.  Resurgent subsequently sent Plaintiff a letter requesting that he provide additional documentation to support a fraud investigation, such as a police report, identity theft affidavit or "other information."  *Id.*, ¶ 18 and Exh. B.  There is no indication in the Complaint that Plaintiff ever did so.  Like the FAC, the SAC states in conclusory fashion that after Plaintiff failed to cooperate in the fraud investigation, "Defendants each continued to send [unspecified] dunning letters to Plaintiff."  *Id.*, ¶ 19.  But like the FAC, the SAC omits any mention of the letters' content.

Finally, in defiance of this Court's Order, Plaintiff continues to allege that the credit reporting of the debt violated the FDCPA and "has negatively affected [his] credibility as a consumer."  *Id.*, ¶¶ 21-25.  He asserts this credit reporting as a second violation of the FDCPA, along with the unspecified "dunning letters."

## III.    LEGAL ARGUMENT

### A.    Standard on a 12(b)(6) Motion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*, 556 U.S. at 678.  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and draw all reasonable

inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (*quoting Twombly,* 550 U.S. at 556-57 (internal citations omitted).

Here, given Plaintiff's conclusory allegations, he has failed to state any claim for relief that is plausible on its face.

### B.   Plaintiff's FDCPA Claims Fail Because Plaintiff Has Alleged No Material Misrepresentation Made in the Letters He Received

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Prohibited conduct includes falsely representing "the character, amount, or legal status of any debt," knowingly communicating false credit information "including the failure to communicate that a disputed debt is disputed," and using false representations or deceptive means to try to collect any debt. §§ 1692e(2), e(8), e(10). Further, a collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

The FDCPA's goal is to "protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'" *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1170 (9th Cir. 2006) (internal citation omitted). Consequently, courts apply the "least sophisticated debtor" standard to determine if the collector's actions or information provided were misleading or confusing. *Id.* at 1171. This standard asks whether the least sophisticated

1    debtor is "able to understand, make informed decisions about, and participate fully and

2    meaningfully in the debt collection process." *Id.*  While the least sophisticated debtor may

3    be "uninformed, naïve, and gullible," his interpretation of a collection letter cannot be

4    "bizarre or unreasonable." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th

5    Cir. 2014) (internal citation omitted).  When determining FDCPA liability, courts are "not

6    concerned with mere technical falsehoods that mislead no one, but instead with genuinely

7    misleading statements that may frustrate a consumer's ability to intelligently choose his or

8    her response." *Id.* (internal citation omitted). That is, a debt collector's false or misleading

9    representation must be "material" to be actionable under the FDCPA.  *Id.*  In other words,

10   because "false but non-material representations are not likely to mislead the least

11   sophisticated [debtor]," they are not actionable under the FDCPA.  *Id.*

12        In the SAC, Plaintiff does not correct the failings the Court identified in the FAC.

13   First, he fails to allege anything in the March 2022 letters that was purportedly false,

14   misleading, or deceptive—aside from the fact that Plaintiff believed the debt was not his.

15   *See* SAC, ¶¶ 10-25.  However, as this Court previously concluded, an "allegation that the

16   debt sought to be collected is not owed, standing alone, cannot form a basis for a 'false and

17   misleading' practices claim under the FDCPA." *Bleich v. Revenue Maximization Grp,. Inc.*,

18   233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002).  *See* Order.

19        Similarly, an allegation that a collector violated the FDCPA by sending letters to the

20   wrong person is insufficient, on its own, to support a claim.  *See, e.g., Campbell v. MBI*

21   *Associates, Inc.*, 98 F. Supp. 3d 568, 586 (E.D.N.Y. 2015) (rejecting claim that collector

22   violated the FCDPA by sending letters to a person who, according to plaintiff, it knew was

23   not responsible for the debt, where collector sent letters to two-year-old son of debtor in

24   attempt to collect debt incurred for son's medical treatment); *Richeson v. Javitch, Block &*

25   *Rathbone, LLP*, 576 F. Supp. 2d 861, 868 (N.D. Ohio 2008) (dismissing complaint alleging

26   collector violated FDCPA by sending validation letter regarding debt that plaintiff asserts

was the result of identity theft and was not owed by plaintiff because complaint was "bereft of any facts that would make it reasonable to infer that [collector] had actual knowledge that the debt did not belong to [plaintiff]"); *Garcia v. Gurstel Chargo, P.A.*, No. 2:12-CV-1930 JWS, 2013 WL 4478919, at *5 (D. Ariz. Aug. 21, 2013) (finding that a fraud affidavit sent to the plaintiff after he had requested that communications cease did not violate the FDCPA because it constituted "notice of a specific remedy" that the defendant might invoke); *Opico v. Convergent Outsourcing, Inc.*, No. C18-1579RSL, 2021 WL 1611505, at *10 (W.D. Wash. Apr. 26, 2021) ("The Court fails to see how merely contacting an individual whose name matches the account holder about the account debt, notifying the individual about the process for disputing the validity, and providing the individual with § 1692g verification in response to the individual's request, could qualify as 'unfair or unconscionable means' in this case.").

The allegations of the SAC confirm that far from misleading Plaintiff, the March 2022 letters were either initial communications or notices of a specific remedy – both authorized by FDCPA.  *See Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) ("Collection notices that include the [FDCPA's] verbatim language have been held not to be confusing."); *Jang v. A.M. Miller & Assoc.*, 122 F.3d 480, 484 (7th Cir. 1997) (holding that a collection notice that uses the exact statutory language will not be considered false, misleading, or deceptive).

Here, although Plaintiff claims vaguely that he was "confused" by the letters (SAC, ¶¶ 11, 15), he knew immediately that the debt did not belong to him and called Resurgent to initiate an investigation (SAC, ¶¶ 12-13).  Defendants responded by requesting that Plaintiff submit a fraud affidavit or other information supporting his claim that the debt was not his and by marking the account as "disputed."  SAC, ¶¶ 16-18.  Plaintiff was obviously able to intelligently choose his response to Defendants' collection effort:  He disavowed the debt and was never "confused" into believing that he owed or must pay it.  To the contrary, he

1   was given specific instructions to submit support for his dispute, but never did so.

2   Moreover, the Complaint is devoid of any allegation that Defendants sent him additional

3   letters attempting to collect the debt *after* he provided a fraud affidavit or other support for

4   his dispute.  Thus, the letters Plaintiff received in March 2022 and allegedly "continued"

5   receiving do not, as a matter of law, support his FDCPA claim.

6        Accordingly, Plaintiff's FDCPA claim should be dismissed without leave to amend

7   as to all three Defendants on this basis.

8        **C.    Plaintiff's FDCPA Claims Additionally Fail Because Credit Reporting Is**

9                 **Not Actionable under the FDCPA and Defendants Correctly Reported the**
                  **Debt as "Disputed"**

10       Despite this Court's holding that "claims based on Defendants' reporting of the

11  debt fail as a matter of law, and Plaintiff may not include such claims in his second

12  amended complaint," Plaintiff has doubled down on his allegation that Defendants' credit

13  reporting of the debt violated §§ 1692e and 1692f of the FDCPA.  *See, e.g., See* SAC, ¶¶

14  21-22, 39-42, 65-68, 73.  This Court previously dismissed the credit report claims, and

15  they should be stricken from the SAC.  In addition to the Court's prior Order, these

16  allegations continue to fail for three interrelated reasons.

17       First, credit reporting "which is known, or which should be known to be false" (15

18  U.S.C. 1692e(8)) is not the proper subject of an FDCPA claim.  *See Horvath v. Premium*

19  *Collection Servs., Inc.*, No. CV-09-2516PHX-GMS, 2010 WL 1945717, at *3 (D. Ariz. May

20  13, 2010) ("To the extent that the Amended Complaint can be read to imply that PCS's

21  communications with credit reporting agencies were false or inaccurate, this cannot serve as

22  the basis for his claim because the FCRA specifically precludes private parties from

23  bringing claims under § 1681 s–2(a).  Mr. Horvath cannot circumvent the FCRA by raising

24  his claim pursuant to the FDCPA."); *Drake v. Enhanced Recovery Co., LLC*, No. 6:15-CV-

25  01899, 2018 WL 1402586, at *3 (D. Or. Mar. 19, 2018) (holding that "the reporting of the

26  Account to the CRAs was not in connection to the collection of the Account" and thus could

1    not be the basis for an FDCPA claim because "[t]he recipient of the alleged 'false,

2    deceptive, or misleading representation' was not the debtor, but rather, the CRAs.").

3            As this Court noted in its Order, the FDCPA does not specify when such

4    communications are unlawful, but the Fair Credit Reporting Act ("FCRA") outlines when

5    these communications are allowed.  For instance, the FCRA "requires furnishers of

6    information . . . to consumer reporting agencies to provide accurate information" regarding a

7    consumer's debt.  *See* 15 U.S.C. § 1681s-2(a).  However, there is no private right of action

8    under the FCRA to enforce the obligations of § 1681s-2(a).  *Horvath*, 2010 WL 1945717, at

9    *2; *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

10   And, a plaintiff "cannot circumvent the FCRA by raising his claim pursuant to the FDCPA."

11   *Horvath*, 2010 WL 1945717, at *3.

12           Second, as in *Drake*, the reporting of Plaintiff's debt as "disputed" to the CRAs was

13   "in fact true."  *Drake,* 2018 WL 1402586, at *3.  Plaintiff admits that on or about March 28,

14   2022, he called Resurgent to dispute the debt explaining that "he never opened a line of

15   credit with Credit One Bank."  SAC, ¶ 12.  Plaintiff further admitted in his original

16   Complaint that LVNV duly reported the debt as "disputed" to the CRAs.  *See* Cmplt., ¶¶ 20-

17   21.[2]  The fact that only Experian allegedly omitted the dispute from its reporting does not

18   support an inference that Defendants failed to convey to Experian that the debt was

19   "disputed," but rather that Experian itself misreported the debt as undisputed, contrary to

20   what LVNV conveyed.  *See* SAC, ¶ 68.

21           Finally, as in *Drake*, the reporting of the debt to the CRAs "did not seemingly

22   frustrate plaintiff's ability to choose his response."  *Drake,* 2018 WL 1402586, at *3.  Here,

---

[2] "Where a pleading is amended or withdrawn, the superceded portion ceases to be a conclusive judicial admission."  *Huey v. Honeywell, Inc.*, 82 F.3d 327, 33 (9th Cir. 1996).  Nevertheless, "allegations in prior pleadings are competent, admissible evidence of the facts stated [and] may be controverted 'like any other extra judicial admission made by a party.'"  *Barno v. Ryan*, No. CIV.07CV1373JMWMC, 2008 WL 2704976, at *1 (S.D. Cal. July 9, 2008).

1  as in *Drake*, Plaintiff "successfully disputed the debt" and continues to dispute it.  *Id.*

2  (granting summary judgment in favor of defendant on plaintiff's FDCPA claim).  *See* FAC,

3  ¶¶ 16, 20-21.

4       Thus, because the reporting of Plaintiff's disputed debt does support his FDCPA

5  claim, the claim should be dismissed as to all three Defendants on this additional basis.

6       **D.  Plaintiff's Claims Should Be Dismissed without Leave to Amend**

7       While a court should grant leave to amend "when justice so requires," leave is

8  "properly denied … if amendment would be futile."  *Carrico v. City and Cnty. Of San*

9  *Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (citations and internal quotation marks

10  omitted).  In addition, the district court's discretion to deny leave to amend is "particularly

11  broad" where, as here, the plaintiff has previously filed an amended complaint.  *Wagh v.*

12  *Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003).  Thus, "[l]eave to amend may … be

13  denied for repeated failure to cure deficiencies by previous amendment."  *Abragninin v.*

14  *AMVAC Chem. Corp*, 545 F.3d 733, 742 (9th Cir. 2008) (citations omitted).

15       Here, Plaintiff has not identified—and cannot identify—any material

16  misrepresentation relating to the debt at issue.  Sending initial communications and requests

17  for fraud affidavits do not, as a matter of law, constitute a material violation of the FDPCA.

18  Plaintiff has identified no content of these letters that is misleading.  Similarly, the reporting

19  of the debt as "disputed" was accurate, and in any event, credit reporting alone does not

20  violate the FDCPA as a matter of law.  Finally, Plaintiff has already amended his pleading

21  twice and failed to correct these deficiencies, and the SAC completely ignores the Court's

22  Order.  Accordingly, Plaintiff's Complaint should be dismissed without leave to amend.

23  . . .

24  . . .

25  . . .

26  . . .

1

## IV.    CONCLUSION

2      For all the foregoing reasons, the Court should grant Defendants' Motion to Dismiss

3   Plaintiff's SAC with prejudice.

4

5      RESPECTFULLY SUBMITTED this 7th day of February, 2023.

6                              COPPERSMITH BROCKELMAN PLC

7

8                        By /s/Marvin C. Ruth
                            Marvin C. Ruth
9                           *Attorneys for Defendants*
                            *Resurgent Capital Services LP,*
10                          *LVNV Funding LLC and*
                            *Johnson Mark LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26